**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FRANK J. FISHER,

      Plaintiff,

v.                                    Case No. 20-12403

MICHELLE M. PERRON,

      Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

     Plaintiff Frank Fisher brings a complaint against Defendant Michelle Perron, his sister, alleging that in violation of both state and federal law, Defendant secretly recorded various phone conversations between the parties where they discussed the estate of their recently deceased mother. Plaintiff further alleges the illegality of her filing a transcript of one of these calls as a publicly available exhibit in a Wayne County, Michigan probate action. Defendant now moves to dismiss the complaint for failure to state a claim on which relief can be granted. The motion has been fully briefed and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the motion to dismiss will be granted, and the complaint will be dismissed with prejudice.

### I. BACKGROUND

     The following facts are drawn from the complaint. For the purposes of deciding this motion, all well-pleaded factual allegations are accepted as true. Plaintiff Frank

Fisher, a Virginia resident, is the personal representative of the Estate of Anne Markley
Spivak (his mother) and is a co-trustee to the decedent's revocable and testamentary
trusts. (ECF No. 1, PageID.3-4.) Defendant Michelle Perron, a Michigan resident, is
Plaintiff's sister and a co-trustee of their mother's revocable trust. Other co-trustees are
Plaintiff and brother Peter B. Spivak, Jr., who resides in Washington state. (*Id.* at 4.)

In a familiar story that has been repeating itself since the time of Jacob and
Esau's feud over a birthright, Plaintiff and Defendant have been locked in a protracted
dispute over their inheritance with each alleging that the other has engaged in nefarious
conduct to advance his or her own position. (*Id.* at 4, 7, 13.) Defendant first initiated
litigation in Wayne County Probate Court in September 2018, ultimately filing "numerous
other claims, petitions, and pleadings against Plaintiff in the Decedent's Estate Action,
and in two other proceedings in the . . . Probate Court" against the revocable trust and
the testamentary trust. (*Id.* at 7.)

In the Probate Court, Defendant filed, as a public exhibit, the transcript of a
February, 2018, telephone call among the three siblings (Defendant, Plaintiff, and
Spivak) which Defendant had secretly recorded. (*Id.* at 8.) From their respective home
states, the parties on the call "discussed one of the various disputes that Defendant had
raised relating to the Decedent's Estate and the Revocable Trust,  and communicated
concerning possible settlement of that dispute." (*Id.* at 6.) While Plaintiff publicly filed
only the transcript of the February 18th call, the complaint alleges that she recorded
other phone calls as well among the siblings and may have disclosed the contents of
the calls to the court reporter she hired to produce transcripts, her attorney, "and
possibly others." (*Id.* at 6.) In the probate action, Defendant alleged that the contents of

2

the call supported her theory "that Plaintiff was engaged in fraud and engaged in a conspiracy to improperly influence the administration of their mother's estate." (*Id.* at 11.)

The probate court, however, ultimately ordered the call transcript and its contents stricken from the record. (*Id.* at 9.) And the probate court found Defendant's "allegations against Plaintiff (Frank Fisher) and one or more of the estate entities in the Decedent's Estate Action and the Revocable Trust Action were frivolous and warranted sanctions." (*Id.* at 9.) In total, $43,451.23 in sanctions were ordered against the Defendant in order to cover attorney's fees and costs. (*Id.* at 10.) All Defendant's claims in Wayne County Probate Court were eventually dismissed. (*Id.*)

Plaintiff now brings the present suit in federal court seeking damages because, he alleges, the covert recordings made by Defendant—and the public filing of the February 2018 telephone call transcript—violated both Federal and State statutes as well as Michigan common law. He alleges that Defendant recorded the calls with the "inten[t] to use private information contained in the Sibling Calls to disclose private information publicly, and to embarrass, damage, and manipulate Plaintiff, particularly with respect to their mother's estate." (*Id.* at 12.)

Plaintiff brings three counts. He first alleges (Count I) that Defendant violated, 18 U.S.C. §§ 2510 *et seq.*, by intentionally intercepting and disclosing the contents of the phone calls. (*Id.* at 15.) Plaintiff also alleges (Count II) that recording the calls violated Michigan's eavesdropping statute, MCL §§ 750.539a *et seq.*, because Michigan law requires the consent of both parties before a call can be recorded. (*Id.* at 18.) Finally, he alleges a Michigan common law claim (Count III) by contending that Defendant

"intentionally placed the Call Transcript, along with her allegations against Plaintiff, in the public eye" constituting a tortious "public disclosure of private facts." (*Id.* at 19.)[1]

Defendant responds to the complaint by moving for dismissal under Federal Rule of Civil Procedure 12(b)(6) arguing that none of the three counts states a valid claim as a matter of law. (*See* ECF No. 6.)

### III. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

---

[1] Plaintiff raises a federal claim in Count I, Plaintiff pleads that this court has jurisdiction through 28 U.S.C. § 1331 and 28 U.S.C. § 1367. He alternately alleges that the amount of potential damages exceeds $75,000 so the Court possess diversity jurisdiction under 28 U.S.C. § 1332(a) applies.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. DISCUSSION

Due to the nature of the Federal wiretapping statute, which is applicable only when a party to a conversation "intercept[s] [it] for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," 18 U.S.C. § 2511, the court first addresses the viability of Plaintiff's state law claims as one or more of them are needed to support the alleged violation of Federal statute.

5

## A. Michigan Eavesdropping Statute

In Count II, Plaintiff alleges that Defendant's covert recording of numerous calls between Defendant and her two siblings is a violation of Michigan's eavesdropping statute which provides that:

> Any person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

MCL § 750.539c. The statute defines "eavesdropping" as meaning "to overhear, record, amplify or transmit any part of the private discourse *of others* without the permission of all persons engaged in the discourse." MCL § 750.539a(2) (emphasis added). Plaintiff contends the Eavesdropping Statute should be read as requiring "two-party" consent. (ECF No. 8, Page.ID.145-46.) Defendant responds by arguing that this question has already been settled by the Michigan Court of Appeals in two published opinions *Sullivan v. Gray* and *Lewis v. LeGrow* which have explicitly held that the statute does not prevent a participant from recording the contents of a conversation herself without the permission of others on the call. (ECF No. 6, PageID.48-49 (citing 117 Mich. App. 476, 481, 324 N.W.2d 58 (1982); 258 Mich. App. 175, 185, 670 N.W.2d 675 (2003).)

While Plaintiff concedes that the holdings of both *Sullivan* and *Lewis* would bar their claim, he points out that, unlike a decision of a state high court, a published state appellate court decision is not fully binding on a federal district court in this instance. (*See* ECF No. 8, Page.ID.142-43.) *See also Grantham & Mann, Inc. v. Am. Safety Prod., Inc.*, 831 F.2d 596, 608-09 (6th Cir. 1987) ("the decision of an intermediate appellate state court. . . is a datum for ascertaining state law which is not to be

disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*")(quotations omitted). And Plaintiff argues there are other data supporting a finding that MCL § 750.539c requires two-party consent. (*Id.*) Specifically, Plaintiff cites a recent decision in the Eastern District of Michigan which, after examining "all available data," found that "the Michigan Supreme Court would decide in the same manner and apply the same construction advanced by Judge Brennan in his dissenting opinion in *Sullivan*" and read the statute as requiring "the consent of 'all parties thereto.'" *AFT Michigan v. Project Veritas*, 397 F. Supp. 3d 981, 988 (E.D. Mich. 2019) (Parker, J.), *leave to appeal denied sub nom* (quoting MCL §§ 750.539a, 750.539c). The *AFT Michigan* court also certified the issue for the Michigan Supreme Court to consider.  Defendant argues that this court should agree with *AFT Michigan* and hold that the Michigan Supreme Court would require the consent of all parties to a conversation in order to record.

Alternatively, because the district court certified the question in *AFT Michigan* to the Michigan Supreme Court, Defendant argues the court should decline to decide this issue until after the Michigan Supreme Court acts on the petition and decides whether to accept the certified question. (*Id.* at 148 (citing *AFT Michigan v. Project Veritas*, No. CV 17-13292, 2020 WL 5761032, at *2 (E.D. Mich. Sept. 28, 2020) (certifying the interpretation of MCL § 750.539c to the Michigan Supreme Court).) Examining all available data, however, points to that conclusion that this court should continue to apply the holding of *Sullivan* and dismiss Plaintiff's claim under the Michigan eavesdropping statute.

The first datum point is *Sullivan* itself, a 1982 decision in which the Michigan Court of Appeals found that because the definition of "eavesdrop" was to "overhear, record, amplify or transmit any part of the private discourse of others" the "statutory language, on its face, unambiguously excludes participant recording from the definition of eavesdropping by limiting the subject conversation to 'the private discourse of others.'" *Sullivan*, 117 Mich. App. at 481, 324 N.W.2d at 60 (citing MCL 750.539a(2)). The second datum point is that the Michigan Court of Appeals explicitly affirmed the *Sullivan* interpretation in its 2003 *Lewis* decision and continues to regularly cite the holding. *Lewis*, 258 Mich. App. at 185; 670 N.W.2d at 684 (2003); *see also People v. Williams, N*o. 346689, 2020 WL 2601567, at *3 (Mich. Ct. App. May 21, 2020) (finding that "a participant in a conversation does not violate MCL 750.539c by recording the conversation without the other party's knowledge or consent"). The Michigan Supreme Court has never weighed in on this question of statutory interpretation. *See AFT Michigan*, 397 F. Supp. 3d at 987.

As another datum point is that the Sixth Circuit (albeit in unpublished decisions) and federal district courts have regularly applied the holding of *Sullivan*. *See e.g., Gamrat v. McBroom*, 822 F. App'x 331, 334 (6th Cir. 2020) ("[U]nder [Michigan] law, participants in private conversations likewise may record those conversations.") *see also Gamrat v. Allard,* 320 F. Supp. 3d 927, 945 (W.D. Mich. 2018) (Quist, J.), *aff'd sub nom.* (finding no violation of state law when "when the individual recording the conversation is also a participant"); *Ruth v. Superior Consultant Holdings Corp.*, No. 99-CV-71190-DT, 2000 WL 1769576, at *3 (E.D. Mich. Oct. 16, 2000) (Zatkoff, J.) (holding that under *Sullivan*, Plaintiff "is permitted under federal and state law to record his

conversations"). Even after *AFT Michigan* certified to the Michigan Supreme Court the proper interpretation of MCL 750.539c, the Sixth Circuit continues to apply the holding from *Sullivan. See Courser v. Michigan House of Representatives,* No. 19-1840, 2020 WL 5909505, at *12 (6th Cir. Oct. 6, 2020) (citing *Sullivan*, 117 Mich. App. at 481, 324 N.W.2d at 59–61) (finding that"[t]he eavesdropping statute does not apply to participants in the conversation").

A final datum point is a recognition of the duty of this court to apply the "law as it is" today. *McFarland v. Henderson*, 307 F.3d 402, 409 (6th Cir. 2002). While the court is not "bound" by the Michigan Court of Appeal's repeated interpretation of a Michigan statute, the court gives substantial deference to the intermediate state court's interpretation of Michigan law. Indeed, the court cannot disregard such precedent "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Grantham & Mann, Inc.*, 831 F.2d at 608-09. This court, respectfully, is unpersuaded by the reasoning in *ATF Michigan,* as the district court did not conduct its own thorough statutory analysis of the question or rely on other data that had since come to light. Instead, the court in *ATF Michigan* relied on the reasoning of the dissent in the original *Sullivan* opinion. *See AFT Michigan*, 397 F. Supp. 3d at 988 (E.D. Mich. 2019) ("This Court unequivocally concurs with Judge Brennan's dissenting opinion [in *Sullivan*] and adopts its rationale."). The *AFT Michigan* decision by itself is not sufficient to outweigh other persuasive state and federal precedent which uniformly continue to apply the majority's holding in the Michigan Court of Appeal's *Sullivan* decision.[2]

---

[2] The court is also unpersuaded that it should defer on issuing a ruling on this mater until the Michigan Supreme Court decides whether to consider the certified question presented in *AFT Michigan.* Such a delay would impose unnecessary costs on

Since it is undisputed in the present case that Defendant was a participant in the calls she recorded, the court finds that her alleged actions cannot constitute a violation of the Michigan Eavesdropping statute as its interpretation stands today. *See Sullivan*, 117 Mich. App. at 481, 324 N.W.2d at 60. Therefore, Count II of Plaintiff's complaint must be dismissed with prejudice.

### B. Public Disclosure of Private Facts

In Count III of his complaint, Plaintiff alleges that the "Defendant intentionally disclosed information that was highly offensive to Plaintiff" when Defendant publicly filed a transcript of the call as an exhibit during the state probate court proceedings. (ECF No. 1, PageID.19.) Plaintiff claims that the call "contained private facts about Plaintiff's private life—namely, details regarding the fact that he was engaged in a protracted battle with his sibling." (*Id.*) Plaintiff further alleges "Defendant intentionally recorded the February 18 Call in an attempt to use the contents to further her groundless allegations against Plaintiff in the Wayne County Probate Court." (*Id.* at 12.)

Defendant moves to dismiss this claim by arguing that the disclosure of the transcript during the course of judicial proceedings was covered by Michigan's common law doctrine of absolute litigation privilege because its contents were "relevant, material, or pertinent to the issue being tried." (ECF No. 6, PageID.52.) In his responsive briefing, Plaintiff challenges the applicably of litigation privilege on two main grounds. First, he

---

the parties given the low probability that the Michigan Supreme Court will actually hear arguments on such a petition, *see The Work of the Court*, Michigan Supreme Court, https://courts.michigan.gov/courts/michigansupremecourt/clerks/pages/statistics.aspx (last visited Dec. 15, 2020) (noting that only "2-3 percent [of applications] are argued before the Court and decided by opinion" each year), and the equally low probability, in this court's view, that the Michigan Supreme Court will abandon *Sullivan*.

correctly observes that while Michigan courts have found litigation privilege to bar claims "based on libel, slander, or defamation," no published Michigan decision has ever extended the privilege to include the tort of "public disclosure of private facts." (ECF No. 8, PageID.150-51.) He thus argues that an extension of the privilege would be inappropriate. (*Id.*) Second, Plaintiff argues that even if the privilege does extend to his tort claim, it would be inappropriate to dismiss the claim based on a privilege defense without further factual development. (*Id.*) Examining all applicable precedents, the court is convinced that the public policy rational behind absolute litigation privilege is equally applicable to the tort of public disclosure of private facts and no further factual development is necessary. Therefore, the court finds that Count III fails as a matter of law.

To prove a claim for "invasion of privacy through the public disclosure of private facts, a plaintiff must show '(1) the disclosure of information (2) that is highly offensive to a reasonable person and (3) that is of no legitimate concern to the public.'" *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 597-98, 865 N.W.2d 915, 919-20 (2014) (quoting *Doe v. Mills*, 212 Mich. App. 73, 80, 536 N.W.2d 824 (1995)). The claim "must relate to the individual's private as opposed to public life" and liability will not be imposed for information "already of the public record or otherwise open to the public." *Id.* (quotations omitted). The publicity must consist of dissemination of the information "'to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* (quoting Restatement, Torts 2d, § 652D).

In Michigan, the concept of absolute privilege is also well established, covering "testimony or other communications or disclosures made in the course of judicial proceedings." *Ellis v. Kaye-Kibbey*, 581 F. Supp. 2d 861, 878 (W.D. Mich. 2008) (citing *Maiden v. Rozwood*, 461 Mich. 109, 597 N.W.2d 817, 830 (1999))*; see also Oesterle v. Wallace,* 272 Mich. App. 260, 265, 725 N.W.2d 470, 474 (2006) (quotations omitted) ("Immunity extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits.").

The Michigan Supreme Court has long held that the privilege applies whenever statements are *relevant, material or pertinent* to the matter at issue in the proceeding, "'their falsity or the malice of their author is not open to inquiry. They are then absolutely privileged.'" *Sanders v. Leeson Air Conditioning Corp.*, 362 Mich. 692, 695, 108 N.W.2d 761, 762 (1961) (quoting *Hartung v. Shaw*, 130 Mich. 177, 89 N.W. 701, 701 (1902)). *See, e.g.*, *Acre v. Starkweather*, 118 Mich. 214, 76 N.W. 379 (1898) (holding that a witness was not liable for slander for testimony given in response to questions on cross-examination at a trial). "The [litigation] privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation." *Maiden*, 461 Mich. at 134, 597 N.W.2d at 830 (1999) (citation omitted)*; see also* Restatement, Torts 2d, § 587 ("[W]hile a party may not introduce into his pleadings defamatory matter that is entirely disconnected with the litigation, he is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation.").

When a plaintiff seeks to establish that statements or other communications or disclosures during a judicial proceeding falls outside the privilege, "*the burden is on the*

*plaintiff* to allege and then prove that statements made in the course of judicial proceedings, including pleadings and argument, have no relevance, pertinence, or materiality to the matter being litigated." *Lawrence v. Burdi*, 314 Mich. App. 203, 219, 886 N.W.2d 748, 758 (2016) (emphasis added).

Plaintiff does not take issue with these precedents, but instead, argues that the concept of absolute litigation privilege is limited to the torts of "libel, slander, or defamation" because no published Michigan court decision has yet found the privilege applicable "to the tort of public disclosure of private facts." (ECF No. 8, PageID.151.) By the same token, however, Plaintiff points to no Michigan court decisions that considered and rejected the applicability of absolute privilege to the tort of public disclosure of private facts. And since the Michigan Supreme Court has not addressed the issue, this court "must ascertain from all available data including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule what the state's highest court would decide if faced with the issue." *Grantham & Mann, Inc.*, 831 F.2d at 608.

The Michigan Supreme Court, has noted that the "great principle" underlying absolute litigation privilege "is public policy" as it "protect[s] the defamer from all liability to prosecution for the sake of the public good." *Timmis v. Bennett*, 352 Mich. 355, 362, 89 N.W.2d 748, 751 (1958). And as Defendant notes, other jurisdictions have found that absolute immunity also bars claims for public disclosure of private facts on public policy grounds. *See, e.g.*, *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 56 (Ill. App. Ct. 2014) ("[A]bsolute litigation privilege applies to plaintiff's invasion of privacy claim."); *Buschel v. MetroCorp.*, 957 F. Supp. 595, 598 (E.D. Pa. 1996) ("Pennsylvania has extended the

13

absolute privilege to invasion of privacy actions."); *Sacks v. Hall*, 2014 WL 6602460, at
*15 (Tex. App. Nov. 20, 2014) (holding that an attorney was immune from suit for an
alleged public disclosure of private facts—purportedly contained in dental records filed
as an exhibit—because the attorney's "conduct [was] undertaken. . . to assist his client
in defending against the suit"); *Espinoza v. City of Seattle*, 2019 WL 5079950, at *2, *5
(W.D. Wash. Oct. 9, 2019) (holding that under Washington common law, Plaintiff could
not bring a claim against Defendant for public disclosure of private facts or common law
invasion of privacy after Defendant published "[Plaintiff's] full name, home address, full
social security number, tax records and other private information on the public docket"
because "the litigation privilege is in place to curb the 'chilling effect' that arises from
threatened litigation over actions taken in judicial proceedings, the privilege applies
'regardless of the theory on which that subsequent litigation is based.'").

      The court is also persuaded by an unpublished Michigan Court of Appeals
decision that applied litigation privilege to the tort of public disclosure of private facts.
*See Hoff v. Spoelstra*, 2008 WL 2668298, *13-14 (Mich. App. July 8, 2008) (shielding
attorneys from tort claims based on "public disclosure of private facts, civil extortion, and
intentional infliction of emotional distress" arising out of attorneys' alleged leak of
plaintiff's private e-mails to the local press during litigation).

      Fundamentally, the court agrees that the public policy concerns that undergird
absolute litigation privilege apply equally to the tort of public disclosure of private facts.
The goal of litigation privilege is to enable parties to present all the facts surrounding a
litigated claim without fear of reprisal. With that goal in mind, it makes no sense that a
party filing an affidavit containing a salacious and false, but relevant allegation would be

14

granted immunity, but the party would be subject to liability for filing a relevant and true exhibit merely because it contains facts that are "highly offensive and embarrassing" to another party.

Consequently, the court concludes that, under Michigan law, absolute litigation privilege also bars claims for public disclosure of a private fact if the facts are relevant, material, or pertinent to the litigation. *See Timmis*, 352 Mich. at 363-64, 89 N.W.2d at 751-52.

Perhaps anticipating such a holding, Plaintiff also argues in his response brief that it would be inappropriate for the court to dismiss this count on a Federal Rule of Civil Procedure 12(b)(6) motion because determining the privilege's applicability "is a highly fact-intensive inquiry." (ECF No. 8, PageID.151.) This reasoning, however, misses the Michigan precedent holding that when litigation privilege is implicated it is the burden of the Plaintiff, not the Defendant, to specifically plead, and ultimately prove, facts that establish how contents of a disputed filing "have no relevance, pertinence, or materiality to the matter being litigated." *Lawrence*, 314 Mich. App. at 219, 886 N.W.2d at 758.

Plaintiff's complaint here contains no specific allegations indicating the contents of the February 18th call transcript "discuss[ing] one of the various disputes that Defendant had raised relating to the Decedent's Estate" was not relevant, material, or even pertinent to the Wayne County probate action in which it was filed. (ECF No. 1, PageID.6.) The court also cannot logically infer from the fact that the transcript was later stricken from the record in the probate proceeding that its content was not pertinent to the claims in the probate action. The contents of the transcript may well have been

15

irrelevant in part, or unduly prejudicial in the main, but that does not necessarily mean the contents of the transcript was "entirely disconnected with the litigation." *See* Restatement, Torts 2d, § 587. Because the court finds that the Plaintiff has failed to meet his initial burden by specifically alleging how the contents of the transcript fell outside the purview of absolute litigation privilege, Count III is dismissed.[3]

### C. Federal Wiretapping Statute

In Count I, Plaintiff alleges that Defendant violated the Federal Wiretapping Act, 18 U.S.C. §§ 2510 *et seq*, by intentionally intercepting the contents of the calls without consent and with the intent "to intercept, use, and disclose those communications to harm Plaintiff in several ways." (ECF No. 1, PageID.15.)

The Federal Wiretap Act prohibits the interception and disclosure of wire, oral, or electronic communications, subject to certain exceptions. 18 U.S.C. § 2511(1). A person whose communication has been intercepted or disclosed may bring a civil action to recover: (1) equitable relief; (2) actual or statutory damages; (3) punitive damages; and (4) litigation costs and attorneys' fees. *See* 18 U.S.C. § 2520(a). The statutory scheme includes the following carveout for participants in a conversation that choose to record it:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a

---

[3] The court is also unconvinced by the alternative argument that Defendant's alleged release of recordings from additional calls "to the court reporter, and possibly others," (ECF No. 1, PageID.6), is sufficient to support a cause of action for public disclosure of private facts. (*See* ECF No. 8, PageID.151-52 n.9.) Such a conclusory allegation certainly does not adequately allege a disclosure of a private fact "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge" as required to establish a claim under the tort. *See Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 598, 865 N.W.2d 915, 920 (2014).

16

> party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.*

*Id.* § 2511(2)(d) (emphasis added). This provision demonstrates that the Federal Wiretap Act (generally) requires the consent of only one party for a participant to record a conversation or phone call. *See Gilday v. Dubois*, 124 F.3d 277, 296 (1st Cir. 1997). As Plaintiff correctly points out, under 18 U.S.C. § 2511(2)(d), a party to a conversation who records a call can be liable under the Federal Wiretap Act if the recording was done "for the purpose of committing [a] tortious act" or criminal violation of a state law. (*See* ECF No. 8, PageID.139-40.)

Plaintiff argues that Defendant intended to violate state law in four distinct ways when she recorded the siblings' conversations:

> Indeed, the Complaint alleges Defendant intended to and did commit two criminal acts and two tortious acts in violation of state laws: (i) violation of the Washington state wiretapping statute (Compl. ¶72); (ii) violation of the Michigan eavesdropping statute (Compl. ¶73); (iii) violation of the Michigan tort of public disclosure of private facts (Compl. ¶74); and (iv) violation of the Michigan tort of the breach of Defendant's fiduciary duties (Compl. ¶75).

(*Id.*) Plaintiff reasons that if he can prove even one of these state law claims, then he would succeed in establishing a claim under the Federal Wiretap Act. (*Id.*) As a result, the court must determine if Plaintiff has pled a valid claim under any of the state statute or common law doctrines cited by Plaintiff. After examining each state claim in turn, the court concludes none of the underlying state law claims are valid. Therefore, Count I should also be dismissed.

### 1. Violation of State Eavesdropping Statutes

First, Plaintiff argues that Defendant's alleged recording of the conversations violated both Michigan, *see* Mich. Comp. Laws § 750.539a *et seq.*, and Washington,

*see* Wash. Rev. Code § 9.73.030, wiretapping statutes. This argument is premised on the idea that both states' statutes require all parties to a conversation to consent before it can be recorded.

As the court explains above in Section A, the Michigan statute requires only one-party consent. *See Sullivan*, 117 Mich. App. at 481, 324 N.W.2d at 60. So, as a matter of law Defendant's unilateral decision to record the conversation did not implicate the Michigan eavesdropping statute; therefore, it cannot serve as an underlying illegal act supporting liability under the Federal Wiretap Act.

Because one of the participates in the call, Peter B. Spivak, Jr. joined from Washington State where he resides, at first glance it appears Plaintiff may have a valid claim under Washington statute which requires two-party consent for recording. *See* Wash. Rev. Code § 9.73.030(1) ("[I]t shall be unlawful for any individual… to intercept, or record any. . . [p]rivate conversation, by any device electronic or otherwise. . . without first obtaining the consent *of all the persons* engaged in the conversation.") (emphasis added). Precedent is clear, however, "that the act of intercepting the communication itself" even when a violation of a state statute "is insufficient" to constitute an illegal purpose under 18 U.S.C. §2511(2)(d). *Bowens v. Aftermath Entm't*, 254 F. Supp. 2d 629, 641–42 (E.D. Mich. 2003). *See Boddie v. Am. Broad. Cos.*, 731 F.2d 333, 339 (6th Cir.1984) ("The Wiretap Statute requires the plaintiff to show that the defendants intended an illegal, tortious or injurious act other than the recording of the conversation."); *Roberts v. Americable Int'l., Inc.*, 883 F.Supp. 499, 503 (C.D.Cal.1995) (concluding that "the 'tortious purpose' referenced by the federal permission/exception must be a tortious purpose other than the mere intent to surreptitiously record an oral

conversation") (emphasis in original). Consequently, a violation of the Washington wiretapping statute (or even the analogous Michigan statute) cannot by itself transform Defendant's actions into a violation of the Federal Wiretap Act.[4]

## 2. Public Disclosure of Private Facts

Second, as discussed in Section B above, the filing of the February 18th call transcript cannot constitute a claim for public disclosure of private facts because absolute litigation privilege applies to such a filing. Therefore, the court concludes, as a matter of law, that Defendant did not commit a tortious act in violation of state common law when she chose to file the transcript on the docket. As a result, despite Plaintiff's contention to the contrary, there was no illegal conduct implicating the exception in 18 U.S.C. §2511(2)(d).

## 3. Breach of Fiduciary Duty

Finally, in response to the motion to dismiss, Plaintiff asserts that Defendant's covert recording of the sibling calls constituted "a violation of the Michigan tort of the breach of Defendant's fiduciary duties" as a co-trustee of the Anne M. Spivak

---

[4] The court is also skeptical, that the Washington State wiretapping statute could even be applied here under choice of law doctrine. After all, "a federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits" and "Michigan courts recognize a presumption in favor of *lex fori* and apply Michigan law unless a rational reason to do otherwise exists." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (quotations omitted). Since the court has found that the Michigan eavesdropping statute, Mich. Comp. Laws § 750.539a *et seq*, allows recording of conversations with the consent of only one party this appears to set up a direct conflict with Wash. Rev. Code § 9.73.030 (requiring two party consent). Though this issue has not been briefed, the court's initial inclination is that the Michigan statue would prevail. *See* Carol M. Bast*, Conflict of Law and Surreptitious Taping of Telephone Conversations,* 54 N.Y.L. SCH. L. REV. 147 (2009-2010) (examining the conflict of laws issues created by interstate phone calls given the divergence in state laws on what constitute an illegal recording of a private conversation).

Revocable Trust. (*See* ECF No. 8, PageID.139-40; ECF No. 11, PageID.368) And he argues such an alleged violation of Michigan common law would be sufficient to keep Plaintiff's claim alive under the Federal Wiretap Act. *See* 18 U.S.C. §2511(2)(d). Unlike Plaintiff's tort claim for Public Disclosure of Private Facts, Plaintiff's complaint contains no separate, detailed "count" laying out a breach of fiduciary duty. (ECF No. 1, PageID.17.) Instead, within the federal count, Plaintiff merely includes the following short paragraph:

> At the time that Defendant intercepted, used, and disclosed Plaintiff's oral, wire, and/or electronic communications, Defendant intended to, and subsequently did commit, a tortious act by disclosing publicly the intercepted communication in a tortious manner in violation of the Michigan tort of the breach of Defendant's fiduciary duties as a trustee, including the duties of confidentiality and loyalty.

(*Id.*) The court views this paragraph as an exceedingly threadbare and conclusory claim for breach of fiduciary duty as Plaintiff alleges no facts in support of the claim. *See Iqbal*, 556 U.S. at 678.

"The elements of a fiduciary duty claim are (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages.") *FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 214 (E.D. Mich. 2020) (citation and quotations omitted). There are no facts alleged in the complaint to support these elements. Indeed, given the context and alleged use of the transcript, it is difficult to imagine how Plaintiff could allege the recordings were made in violation of Defendant's fiduciary duty. In light of the lack of factual allegations of this claim, the court is not convinced that Defendant's recording of calls involving the estate and her decision to turn over a recording to the supervising probate court, would constitute a breach of fiduciary duty. Even if such a recording could theoretically constitute a breach of fiduciary duty, the complaint fails to allege any

facts that support the idea that Defendant acted with an intent to breach her duty when she chose to record the calls.

Since none of the four underlying state law claims—based on (i) the Washington state wiretapping statute (ii) the Michigan eavesdropping statute (iii) a public disclosure of private facts or (iv) a breach of Defendant's fiduciary duties—are valid, the Federal Wiretapping Claim in Count I must also be dismissed in its entirety.

## V. CONCLUSION

For the reasons explained above, the court finds that Defendant's recording of the calls with her siblings does not constitute a violation of the Federal Wiretapping Act, 18 U.S.C. §§ 2510 *et seq.* or the Michigan Eavesdropping Statute, Mich. Comp. Laws § 750.539a *et seq.* Nor did it constitute a public disclosure of private fact under Michigan common law. Accordingly,

IT IS ORDERED that Defendant's motion to dismiss (ECF No. 6) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint, (ECF No. 1), is DISMISSED WITH PREJUDICE.

s/Robert H. Cleland                          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 12, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 12, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-12403.FISHER.MTD.AAB.2.docx